IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ANTHONY PRESCOTT, #2174108, | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:18cv577 |
| | § | |
| K. JOHNSON, ET AL., | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Anthony Prescott, a prisoner confined in the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983.

### Procedural History and Factual Background

Plaintiff originally filed this action in 2016 in the Eastern District Texas–Sherman Division against multiple defendants. *See Prescott v. Denton County, et al*., C.A. No. 4:16-cv-879 (Eastern District of Texas–Sherman Division). The Sherman Division allowed Plaintiff to amend his pleadings three times. Plaintiff's third amended complaint, filed in the Eastern District of Texas–Sherman Division on October 31, 2018, was forty-two pages long and named over fifty defendants. (Dkt. #2).

On November 5, 2018, the Hon. Kimberly C. Priest-Johnson, United States Magistrate Judge, signed an order of severance and partial transfer (Dkt. #1). The Order severed the case into five separate actions, retaining claims against some defendants and transferring other claims to the

Eastern District of Texas–Tyler Division, Western District of Texas–Austin Division, and the Southern District of Texas–Houston and Galveston Divisions.

This severed action involves Plaintiff's claims against multiple defendants at the Gurney and Coffield Units. The fifth Amended Complaint (Dkt. #34) is the live pleading in the action before the Court. An amended complaint supersedes and takes the place of a previous complaint filed in a case. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986).

In the fifth Amended Complaint, Plaintiff also sued four inmate defendants, Cory McCowan, Joel Fuentez, Shaucey Franklin, and Nicholas Renner, in addition to fifteen state employees. On March 4, 2020, the Court dismissed Plaintiff's claims against inmate defendants McCowan, Fuentez, Franklin, and Renner with prejudice for the failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). (Dkt. ##41, 51).

On February 11, 2020, the Court ordered the Office of the Attorney General of Texas to file a report addressing Plaintiff's deliberate indifference to his health and safety claims, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Parker v. Carpenter*, 978 F.2d 190, 191-92 (5th Cir. 1992)). (Dkt. #43). The Office of the Attorney General filed the *Martinez* Report on May 13, 2020. (Dkt. #60). Plaintiff filed a response to the *Martinez* Report on June 19, 2020. (Dkt. #66).

On February 11, 2020, the Court ordered Plaintiff to file a More Definite Statement regarding certain claims. (Dkt. #42). Plaintiff filed his response to the Order for a More Definite Statement on March 25, 2020. (Dkt. #54). The Court considers Plaintiff's response to the More Definite Statement as a supplement to his amended response. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (holding that a court is limited to a consideration of the well-pleaded

allegations of Plaintiff's complaint, including any attachments thereto or documents incorporated by reference therein); *Wright v. Dollar Tree Stores, Inc*., 2014 WL 11456816 (N.D. Tex. Sept. 16, 2014). Plaintiff has been allowed to be fully heard on his claims.

## Plaintiff's Claims

In his fifth Amended Complaint, Plaintiff claimed that four inmate kitchen workers—all housed at the Coffield Unit—placed a harmful substance into Plaintiff's food, without warning to him. The four inmate kitchen workers were dismissed, with prejudice, as Plaintiff failed to state a claim upon which relief may be granted regarding these workers. (Dkt. ##41, 51). Plaintiff's statutory and constitutional claims mostly stem from Plaintiff's belief that his food has been tampered with on multiple occasions at different TDCJ units and form the basis of his Eight Amendment claims.[1] Plaintiff also raises claims regarding the American with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1985(3) conspiracy to interfere with civil rights, access to courts, and the denial of due process and equal protection of the law.

Plaintiff specifically alleges that Defendants failed to train, supervise, or promulgate policies to prevent the contamination of his food through the Food Services Department at the Gurney and Coffield Units. Plaintiff also claims that he received tainted or contaminated food from the Commissary Department at both the Gurney and Coffield Units. He further contends that Defendants engaged in a conspiracy to contaminate his food. He alleges that his personal mail has been tampered with by prison officials.

---

[1] Plaintiff raised these same type claims of food tampering against Denton County Jail officials in his original complaint in Civil Action No. 4:16-cv-879, *Prescott v. Denton Cnty., et al.*, and against Byrd Unit prison officials in Action No. 4:18cv4231, *Prescott v. John Doe, et al.*

Plaintiff sued the following Gurney Unit prison employees: (1) Food Service Manager (FSM) K. Johnson, (2) Warden Stuart Calhoun, and (3) Sgt. Cabrea for various statutory and constitutional claims. Plaintiff states that he was at the Gurney Unit from January 25, 2018, to February 12, 2018. (Dkt. #54, p. 2).

Plaintiff also sued the following Coffield Unit prison employees: (4) Assistant Warden Michael Britt, (5) Assistant Warden Todd K. Funai, (6) Assistant Warden Ernest Navarrette, (7) Sgt. Danny Jackson, (8) Lt. Christal Meador, (9) Correctional Officer Tony Dew, (10) Sgt. Lowrey Davis, (11) Correctional Officer Donald Lee, (12) FSM Steven Farris, (13) Kitchen Officer Dennis Nash, (14) Correctional Officer Arthur Thomas, and (15) Law Librarian Gaye Karriker for various statutory and constitutional claims. He was at the Coffield Unit from March 3, 2018 (Dkt. #54, p. 2), to the filing of his Third Amended Complaint on or about October 31, 2018. (Dkt. #2).

Plaintiff specifically asserts that he is bringing claims under the First Amendment, Fifth Amendment, Eighth Amendment, Fourteenth Amendment, the American Against Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1985(2) and (3), and 42 U.S.C. § 1986. Plaintiff's complaints range in time from the date that he was housed at the Gurney Unit, January 25, 2018, to February 12, 2018, and was housed at the Coffield Unit from March 3, 2018, to October 31, 2018, the date this lawsuit was created with his Third Amended Complaint. (Dkt. ##1, 2).

Plaintiff states that he is suing all Defendants in their official and individual capacities. He seeks $80 million in compensatory damages. He also requests punitive damages. Plaintiff seeks a permanent injunction in the form of the Defendants being ordered to:

(1) cease and desist all forms of use of force, any involuntary expose to any form of chemical substance whether legal or illegal, toxic or natural, which has been utilized or has

the potential to be utilized against Plaintiff to intentionally or inadvertently cause harm for any purpose including retaliatory conduct, any form of unlawful reprisal to antagonize, irritate, conceal aggression, or hostility in the furtherance of any personal vendetta, official or unofficial policy, custom, or use or practice,

(2) take every measure to protect Plaintiff from targeted hostility of officers and inmates that might result in attack in any form, correct erroneous application of written regulations contrary to ensuring inmate safety,

(3) cease and desist from all unwarranted intrusions into Plaintiff's correspondence, including but not limited to unnecessary inspections, unauthorized tampering, manipulation, removal or theft of Plaintiff's documents, personal property, cease and desist any knowledgeable concealment or distraction or removal of prison records that would be included in pending litigation,

(4) facilitate direct transportation to all aid from all outside appointments with medical specialist without a layover at any unit,

(5) cease and desist from all forms of dissemination of Plaintiff's personal and private communication and litigation efforts, cease, and desist from unauthorized surveillance of Plaintiff,

(6) cease and desist from all forms of harassment, in person or electronic, direct, or indirect, overt, or covert.

(Dkt. #34, p. 33).

### **Preliminary Screening**

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under 28 U.S.C. § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief

may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts, when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). After a plaintiff has had a fair opportunity to make his case—and if a cause of action has not been established—the court may dismiss the suit. *Id*. at 792.

### *Martinez* Report

On May 13, 2020, pursuant to an Order of the Court, the Office of the Attorney General of Texas filed a report (Dkt. #60) addressing Plaintiff's claims in accordance with *Martinez,* 570 F.2d at 317. The report includes: (1) a sworn affidavit by Dr. Steven Bowers with Plaintiff's relevant medical records as referenced by Dr. Bowers, with a business records affidavit, (2) Plaintiff's relevant grievance records for the time period of January 25, 2018, to December 13, 2019, and (3) a "no records" affidavit concerning Offender Protection Investigation records related to Plaintiff for the time period of January 25, 2018, to December 13, 2019.

Dr. Bowers' affidavit states that he reviewed Plaintiff's medical records from January 30, 2018, to September 6, 2019. Dr. Bowers found no medical complaints by Plaintiff alleging or complaining about being fed contaminated or tainted food by either the Food Service Department or the Commissary Department. Upon his review of the medical records, Dr. Bowers found no allegations or diagnoses of food poisoning regarding Plaintiff. Regarding Plaintiff's claims of weight loss, Dr Bowers stated:

> Mr. Prescott's weight varied between 181 to 204 pounds with two outliers of 168 pounds on June 28, 2019, preceded by 202 pounds on April 15, 2019, and followed by 196 pounds on September 6, 2019. His weight on April 7, 2018, was 177 pounds, preceded by 190 pounds on April 4, 2018, and followed by 186 pounds on April 15, 2018.

(Dkt. #60-1, p. 3).

The "no records" affidavit concerning Offender Protection Investigation records reflects that Plaintiff did not report any concerns or complaints of his safety being compromised through established procedures from January 25, 2018, to December 13, 2019. (Dkt. #60-8).

The Court has conducted an independent review of the medical records and offender protection records pertaining to his health and safety claims. Based on the review, the Court finds that the *Martinez* Report accurately summarizes the contents of the medical records and offender protection records with respect to Plaintiff.

### Plaintiff's Response

The Order instructing the prison system to submit a *Martinez* Report also gave Plaintiff fourteen days from the receipt of the report to file a response. Plaintiff filed a response to the *Martinez* Report. (Dkt. #66). The Court will consider Plaintiff's responses and objections where applicable.

### Discussion and Analysis

I.    **Claims occurring after October 31, 2018**

Plaintiff's Third Amended Complaint is the original complaint that was filed in this action and is docketed as of October 31, 2018, in Civil Action No. 4:16-cv-879 in *Prescott v. Denton County Jail, et al.*, in the Eastern District of Texas-Sherman Division. (Dkt. #2). Plaintiff's Third Amended Complaint is deemed filed as of October 31, 2018, for the purposes of this lawsuit in 6:18cv577, *Prescott v. Johnson, et al.*[2] The date is important because this will determine which of

---

[2] The Court notes that Plaintiff's Third Amended Complaint is dated October 14, 2018. (Dkt. #2, p. 42). This slight  upward departure from the prison mailbox rule is in Plaintiff's favor. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed).

Plaintiff's claims the Court may properly decide under *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012) (holding that pre-filing exhaustion is required and a court has no discretion to consider claims that have not been exhausted).

Prisoners are required to exhaust claims through the prison's grievance system *before* filing suit in court. *Jones v. Bock*, 549 U.S. 199, 203 (2007); *Gonzalez*, 702 F.3d at 788. In *Gonzalez*, a prisoner completed the two-step grievance process, but only after he filed his 42 U.S.C. § 1983 complaint. *Id.*, 702 F.3d at 787. The Fifth Circuit held: "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.* at 788.

The Court may not consider new issues or claims that arose after the filing of the lawsuit—as those later issues would not have been exhausted through the administrative remedies process before Plaintiff filed his Third Amended Complaint here. *See Gonzalez*, 702 F.3d at 788 (explaining that a court has no discretion to consider claims that have not been exhausted). In his fifth Amended Complaint (Dkt. #34) and in his Response to the Order for More Definite Statement (Dkt. #54), Plaintiff raised claims or events that occurred after the filing of his Third Amended Complaint on October 31, 2018. Although the Court ordered Plaintiff to file an amended complaint after his Third Amended Complaint (Dkt. ##5, 31), the purpose of the order was to seek clarification regarding existing claims and not an invitation to add new claims that were not exhausted before filing suit.

The Court, as a result, will not consider Plaintiff's claims that occurred after October 31, 2018, including his access to courts claims and his food contamination claims from November 1, 2018, through July 2019. (Dkt. #34, pp. 21-25). Exhaustion must have occurred *before* the lawsuit is filed. *Gonzalez*, 702 F.3d at 788 ("[T]he case must be dismissed if available administrative

remedies were not exhausted.") (emphasis added); *see also Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017) (looking to whether administrative remedies had been exhausted "at the time of the filing of the original complaint" rather than any amended complaint). Accordingly, Plaintiff's claims arising after October 31, 2018, are dismissed, without prejudice, for the failure to exhaust administrative remedies.

## II.    Rehabilitation Act and ADA claims

Plaintiff states that he is suing the Defendants in their official and individual capacities for violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (the "Rehab Act"), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165. Title II applies to discrimination in public services.

In the Fifth Circuit, claims under the Rehab Act are identical and duplicative of claims brought under the ADA where a plaintiff claims that the defendant failed to make reasonable accommodation for the disabled plaintiff. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287-88 (5th Cir.), cert. denied, 126 S. Ct. 416 (2005) (noting that the rights and remedies afforded to plaintiffs under Title II of the ADA and Section 504 of the Rehab Act are nearly identical). The Court will therefore consider Plaintiff's ADA and Rehab Act claims jointly as though they were a single claim. *Frame v. City of Arlington,* 657 F.3d 215, 223–24 (5th Cir. 2011).

A.    *Individual capacity claims under the Acts are not cognizable*

Plaintiff may not bring a claim against any defendant in their individual capacities under the ADA or the Rehab Act ("the Acts"). Plaintiff may not bring a 42 U.S.C. § 1983 action for damages against a state official in his individual capacity to vindicate rights conferred by the Acts.

*See Rivera v. Dawson,* 2007 WL 1223914 (5th Cir. 2007) (unpublished) (citing *McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407, 412-14 (5th Cir. 2004)). A plaintiff may not sue the individual defendants for violating the Acts; only the public "entity" is amenable to suit. *See Nottingham v. Richardson,* 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (noting a plaintiff may not sue defendants in their individual capacities under the ADA); *Decker v. Dunbar*, 633 F. Supp. 2d 317, 356-57 (E.D. Tex. 2008) (observing that there is no individual liability in lawsuits under the ADA, and that a plaintiff may not attempt to assert such claims by "casting [his] lawsuit under Section 1983") (citations omitted). Plaintiff's claim for relief against Defendants in their individual capacities under the Acts are dismissed for the failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

B.    *The necessary elements of an ADA/Rehab Act claim*

Defendants may be sued in their official capacities under the Acts.

1.    <u>Standards of Review</u>

Title II of the ADA provides that individuals with disabilities may not "'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Frame,* 657 F.3d at 223 (quoting 42 U.S.C. § 12132); *see also* 28 C.F.R. § 35.149. Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners. *See Tennessee v. Lane,* 541 U.S. 509, 531 (2004); *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 213 (1998). To state a claim under Title II, a plaintiff must allege "(1) that he has a qualifying disability; (2) that he is being [excluded from participation in, or] denied the benefits of services, programs, or activities for which the public

entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).

In addition to those elements, current precedent establishes that while the ADA's reasonable accommodation requirement does not apply under Title II, its "reasonable modifications" requirement[3] has been held to apply in the prison context. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). Consequently, while the ADA "does not require prisons to provide new services or programs for disabled prisoners," these same entities "do have an affirmative obligation to make reasonable modifications ... so that a disabled prisoner can have meaningful access to existing public services or programs." *Borum v. Swisher Cnty.*, No. 2:14-cv-127-J, 2015 WL 327508, at *9 (N.D. Tex. Jan. 26, 2015).

The Fifth Circuit has held that a defendant's failure to make the reasonable modifications necessary to adjust for the unique needs of disabled persons can constitute intentional discrimination under the ADA. *See, e.g., Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004); *Garrett*, 560 F. App'x at 382. A different kind of intent, in other words, governs in ADA cases. *See Id.*, at 385.

2. Plaintiff's claims under the Acts

In Plaintiff's response to the Order for More Definite Statement (Dkt. #54), he asserts that his qualifying disabilities for the purposes of the Acts are bi-polar disorder, mania, a non-specified

---

[3] "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity," 28 C.F.R. § 35.130(b)(7); 42 U.S.C. § 12182(b)(2)(A)(ii); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001).

mood disorder, and depression. (Dkt. #54, p. 3). Plaintiff maintains that his mental health issues are a qualifying disability.

Next, Plaintiff contends that he was "covertly targeted and exposed to a harmful substance concealed within a meal at the Byrd Unit chow hall during a transport layover, on his way to a medical appointment at Hospital Galveston." (Dkt. #54, p. 4). Plaintiff does not provide a date when this alleged event occurred. Upon his return to the Coffield Unit, Plaintiff states that he requested as an accommodation that either he be transported to Hospital Galveston without any layovers for future trips or implement an investigation into the alleged food tampering at the Byrd Unit. (*Id*.). Plaintiff does not assert that any named defendant had any personal involvement in the alleged food tampering at the Byrd Unit.

Plaintiff also attempts to incorporate his various complaints about prison life into his ADA claims—*e.g.*, law library rules regarding attendance and checking out materials, denial of his grievances, telephone restrictions, housing, etc. Plaintiff misunderstands the prima facie elements of an ADA or Rehab Act claim. Plaintiff must allege facts showing that he was excluded from participation in a benefit, service, program, or other activity by reason of his disability. Here, he has alleged no facts that indicate that the typical incidents of prison life are so burdensome that he is unable to participate in the various programs because of his disability and that the program rules were created intentionally to prevent a person with his disabilities from participating. *See Garrett*, 560 F. App'x at 385.

Specifically, Plaintiff fails to satisfy the second and third prongs of the Title II inquiry. To satisfy the second element of a prima facie case of discrimination under the Acts, a plaintiff must establish that he is being excluded from the participation in, or is being denied benefits, services,

13

program, or other activities for which a public entity is responsible. *See Melton*, 391 F.3d at 671. Plaintiff failed to allege any facts that indicate he was denied any service, program, or activity on the basis of his disability related to his claims raised in his fifth Amended Complaint. (Dkt. #34). He also failed to assert any facts that Defendants had an existing service, program, or activity that permitted inmates to be transported directly from the Coffield Unit to Hospital Galveston without a layover and that he was denied access to such a program. The state is not obligated to provide a new program or services to the disabled which have not been previously provided to any group. *See Rodriquez v. City of New York*, 197 F.3d 611, 618-19 (2nd. Cir. 1999) (holding that where New York did not provide safety-monitoring services to the physically disabled, the ADA did not compel the State to provide such services to the mentally disabled).

Plaintiff also failed to allege any facts that the decision to exclude him from the program of "no-layover transports to Hospital Galveston"—if such a program even existed—or subject him to other typical incidents of prison life, was based on his disability. To satisfy the third element of the prima facie case of discrimination under the Acts, a plaintiff must establish that the exclusion, denial of benefits, or discrimination was by reason of plaintiff's disability. *See Melton,* 391 F.3d at 671–72. Courts have universally interpreted this element of an ADA claim to require a showing of intentional discrimination on the part of the defendant. *See, e.g., Delano–Pyle v. Victoria Cnty., Tex.,* 302 F.3d 567, 574 (5th Cir. 2002); *Meagley v. City of Little Rock,* 639 F.3d 384, 390 (8th Cir. 2011) ("[e]very circuit court to address the issue...has reaffirmed that intentional discrimination must be shown to recover compensatory damages").

In his More Definite Statement (Dkt. #54, p. 6), Plaintiff stated that he was denied safe transport to outside mental health specialists. Accepting that Plaintiff is a qualified individual with

a disability, the facts articulated in his amended complaint do not tend to show that he was denied the benefits or services, programs, or activities of a public entity because of his disability. *See Davidson v. Tex. Dep't of Criminal Justice*, 91 F. App'x 963, 965 (5th Cir. 2004) (affirming dismissal of ADA claim where plaintiff failed to show he was adversely treated because of his handicap); *Shaw v Tex. Dep't of Criminal Justice*, 46 F. App'x 225 (5th Cir. 2002) (inmate denied participation in program for handicapped prisoners because of a notation in record that he was member of militant organization).

Even though Plaintiff complains about being subjected to contaminated or tainted food, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham*, 499 F. App'x at 368 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"). The ADA does not cover the mere absence or inadequacy of medical treatment for a prisoner. *See Epley v. Gonzalez*, No. 5:18cv142, 2019 WL 2583143, at *23 (N.D. Tex. May 29, 2019) (citing *Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522772, at *2 (N.D. Miss. Jan. 23, 2018)). Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376. In order to recover compensatory damages under the ADA, Plaintiff must demonstrate intentional discrimination. *Delano-Pyle*, 302 F.3d at 574.

Plaintiff has failed to allege facts that meet the necessary prima facie elements of an ADA or a Rehab Act claim. Accordingly, Plaintiff's claims against Defendants in their official capacities

for violating the ADA and Rehab Act fail to state a claim upon which relief may be granted and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

3.      *Retaliation under the ADA*

Plaintiff asserts that he is bringing a claim 42 U.S.C. § 12203(A) for retaliation under the ADA. To demonstrate unlawful retaliation, a plaintiff must make a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). Section 12203(A) has been held to apply to Title I of the ADA. Plaintiff does not cite to, and the Court cannot find any precedent that extends Section 12203(A) to Title II of the ADA, which includes the prevention of disability discrimination to inmates regarding public services. Plaintiff is neither an employee of TDCJ nor has he suffered an adverse employment action. Plaintiff has failed to state a claim upon which relief may be granted and his ADA retaliation claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

4.      *Punitive damages are not recoverable under the Acts*.

Plaintiff asserts that he is seeking punitive damages against Defendants for the alleged violations of his rights under the Acts. Plaintiff may not sue for punitive damages under these anti-discrimination statutes. A "plaintiff asserting a private cause of action for violations under the ADA, or the Rehab Act may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle*, 302 F.3d at 575. Plaintiff's claim for punitive damages under the Acts fail to state a claim upon which relief may be granted and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

16

III.   <u>**Claims under the First, Fifth, Eighth and Fourteenth Amendments**</u>

Plaintiff has brought various claims under the First, Fifth, Eighth, and Fourteenth Amendments against Defendants in their official and individual capacities. For the Gurney Unit, Plaintiff asserts that: (1) Defendant FSM Johnson "failed to supervise and train members of kitchen staff," (2) Warden Calhoun "further conspired to deprive Plaintiff of his constitutional rights," and (3) Sgt. Cabrera "utilized intimidation to chill Plaintiff's First Amendment rights [and] failed to protect." (Dkt. #34, p. 3).

For the Coffield Unit, Plaintiff claims that: (1) Warden Britt "furthered custom of impeding access to courts," (2) Asst. Warden Funai "failed to promulgate polic[ies] to address safe food prep, service, storage, and meal to delivery" (*Id.*), (3) Asst. Warden Navarrete "failed to [] take any action regarding Plaintiff's objection to intentional food tampering and invasion of inmate correspondence, (4) Sgt. Jackson "failed to take reasonable action to prevent the furtherance of conspiracy to deprive Plaintiff of his right and need of safety, failed to protect," (5) Lt. Meador "failed to adequately train and supervise subordinate officers, failed to initiate disciplinary measures against subordinates which contributed to an escalation in hostilities targeting Plaintiff," (6) Officer Dew "levied malicious threat[s] against Plaintiff and [his] family, instructed inmates how to escalate hostilities targeting Plaintiff which led to a custom of inmate attacks on Plaintiff's food sources resulting in injury," (7) Sgt. Davis "failed to take appropriate action to prevent conspiracy to deprive Plaintiff of First, Fifth, Eighth, and Fourteenth Amendment rights upon notice [and] the failure resulted in other defendants to also avoid duty to intervene causing risk to become pervasive as assailants acted with impunity," (Dkt. #34, p. 36), (8) Officer Lee "further[ed] state custom of utilizing perverted facts to incite inmate hostilities targeting Plaintiff encouraging

inmates to participate in exposing Plaintiff to harmful substances by making claims that they had already poisoned," (9) FSM Farris "demonstrated prior knowledge of and/or participated directly in expos[ing] Plaintiff to unknown substances concealed in food items, failed to intervene and prevent conspiracy to harm Plaintiff," (10) Kitchen Officer Nash "failed to take reasonable steps to prevent tampering of food items leading to Plaintiff's injury and/or directly took part in exposure," (11) Officer Thomas "had awareness of conspiracy to deprive Plaintiff of safety, failed to prevent, [and] acted with deliberate indifference to Plaintiff's right to safety," (Dkt. #34, p. 37), and (12) Law Librarian Karriker "failed to eliminate unreasonable barriers to law library access which significantly limited access to those unaware of how to correctly submit law library attendance request forms" and "willfully, in the furtherance of a conspiracy to deprive Plaintiff of his First Amendment right to redress of grievances, agreed with the Gurney Unit officials to utilize an area of the prison under her control to further frustrate Plaintiff's efforts to further a complaint, at which point was only concerning Denton County Defendants when after Plaintiff correctly submitted request for admission, most requests were arbitrarily denied or otherwise ignored." (Dkt. #34, p. 11).

Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678. A plaintiff meets this standard when he "pleads factual

18

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex*., 444 F.3d 417, 421 (5th Cir. 2006). Plaintiff's claims are rife with conclusory the-defendant-unlawfully-harmed-me accusations, without any substantive facts to support his claims.

### A.    Official capacity claims for money damages

Plaintiff is suing Defendants in their official capacities for money damages. Plaintiff's claim is barred by the Eleventh Amendment. Unless a State consents to suit or Congress exercises its power to override a state's immunity, the Eleventh Amendment bars section 1983 suits in either state or federal courts. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Suits brought against state officials in their official capacity are, in effect, asserted against the state itself and are similarly barred. *Id.* at 71.

It follows that the Eleventh Amendment bars recovery of damages under 42 U.S.C. § 1983 from state employees in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). While a state official's future conduct may be subject to an injunction, a federal court may not award damages against a state official in his official capacity. *Saahir v. Estelle*, 47 F.3d 758, 762 (5th Cir. 1995). To the extent that Plaintiff seeks money damages from Defendants in their official capacities, the Eleventh Amendment bars his claims. The Court finds that Plaintiff's claim for money damages against the Defendants in their official capacities is dismissed for failure to state a claim upon which relief may be granted.

**B.  Eighth Amendment Claims**

Plaintiff asserts that he is suing the Defendants under the Eighth Amendment. "'The Supreme Court has held that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020) (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). An Eighth Amendment claim regarding conditions of confinement must meet two requirements: first, the conditions must have caused an "objectively, sufficiently serious" deprivation, defined as the denial of "the minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, prison officials must have acted with "deliberate indifference" to the plaintiff's health or safety, which means that the official knows that the inmate faces a "substantial risk of serious harm" but "disregards that risk by failing to take reasonable measures to abate it." *Id*. at 561 (internal citation and quotation marks omitted).

The official must be subjectively aware of the facts from which the inference could be drawn and must actually draw the inference. *Id*. "'Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Torres*, 972 F.3d at 663 (quoting *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)); *see Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).[4]

---

[4] A failure-to-protect claim also requires a showing of deliberate indifference. *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (discussing failure-to-protect claim in context of inmate-on-inmate violence); *see Brooks v. Kelly*, 736 F. App'x 497, 497-498 (5th Cir. 2018) (discussing failure-to-protect claim in context of use of force by prison officials).

A defendant's personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018). A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citations omitted); *see Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or respondeat superior liability of supervisors under section 1983").

A plaintiff seeking to establish "supervisor liability for constitutional violations committed by subordinate employees . . . must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (internal quotation marks, alterations, and citation omitted) (emphasis original). A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

### 1.    Food Contamination

In his food contamination claim, Plaintiff alleges that Defendants either failed to supervise kitchen staff or failed to promulgate policies that would ensure the delivery of uncontaminated food or that they failed to protect him from persons who would contaminate his food. From January

25, 2018, to October 1, 2018, Plaintiff does not allege that any Defendant was personally involved in the contamination of his food. (Dkt. #34, pp. 3, 19-20, 24).[5]

Pertaining to his food contamination claims at the Gurney and Coffield Units, Plaintiff believes that on multiple occasions that inmates and, perhaps, guards contaminated his food. He alleges that his food made him feel ill, which is why he believes it was being contaminated. He did not state what the contaminant might be.

He contends that from March 22, 2018, to March 30, 2018, he returned to his cell to consume a hot sauce condiment packet. He states that he had no ill effect at first; upon subsequent use, however, he experienced muscle and nerve pain and reoccurring bouts of losing consciousness. He contends that someone entered his cell and intentionally tainted the hot sauce packet. (Dkt. #34, p. 20). On April 14, 2018, during lockdown at the Coffield Unit, Plaintiff states that an unknown officer and inmate-helper delivered his meal cell side. After consuming the sack meal, he claims that he began to experience severe chest pain with a rapid heartbeat and dizziness. (Dkt. #34, p. 20). He claims that on April 24, 2018, he told Sgt. Davis that he believed his in-cell meal had been tampered with an unknown substance. (Dkt. #34, p. 19). Sgt. Davis allegedly told Plaintiff that this issue was not within the scope of his duties and that Plaintiff should file a grievance.

On April 23-24, 2018, after consuming a breakfast sack meal, Plaintiff declares that he suffered sharp shooting chest, neck, and left arm pain. Plaintiff felt well enough by the evening

---

[5] Plaintiff does allege that on July 21, 2019, Defendant Nash gave him four to five uneaten food trays containing chicken patties that tasted like pesticide chemicals. (Dkt. #34, p. 25). This claim will not be considered pursuant to *Gonzalez*, 702 F.3d at 788 (explaining that a court has no discretion to consider claims that have not been exhausted).

meal that he ate a chicken patty and his earlier symptoms returned. He sought medical attention, and an EKG revealed random misfiring in heart rhythm and concerning blood pressure readings. He states that follow-up blood testing revealed his liver enzyme levels had doubled. Plaintiff claims that he regularly suffered from diminished blood flow to extremities known as bradycardia, with no natural cause found by the doctor. (Dkt. #34, p. 20).

Plaintiff asserts that FSM Farris had prior knowledge and/or participated in exposing Plaintiff to unknown substances in his food (Dkt. #34, p. 37) from October 1, 2018, to October 31, 2018 (Dkt. #34, p. 25). In support of his allegation, Plaintiff specifically alleges that FSM Farris would regularly enter Plaintiff's housing area to speak to the officers on-duty there. (*Id.*). He claims that FSM Farris knew that "assailants were…intentionally adding harmful substances to Plaintiff's meal items" (*Id.*) and failed to report it up his chain or take steps to prevent the food-borne attack.

Plaintiff attributes his various medical symptoms to contaminated food. His assertions relative to contaminated food are entirely conclusory, and he fails to provide the factual detail necessary to plausibly suggest that his food posed an unreasonable risk of serious damage to his future health. All he provides is the bare-bones allegation that on various occasions he believed his food was contaminated. In addition, Plaintiff provides no factual basis for his belief that the symptoms he allegedly suffered were caused by or associated with any alleged contamination of the food provided to him by either prison units' food services departments or respective commissary departments.

Plaintiff's medical records for this same time period do not reflect that he made any complaints regarding eating contaminated food or food poisoning to the Medical Department. Dr. Bower's review of Plaintiff's medical records from January 30, 2018, to September 6, 2019, **found**

no medical complaints by Plaintiff alleging or concerning being fed contaminated or tainted food by either the Food Service Department or the Commissary. Upon his review of the medical records, Dr. Bowers found no allegations or diagnoses of food poisoning regarding Plaintiff in the medical records. (Dkt. #60-1, p. 3). Plaintiff's Emergent Care Record for April 24, 2018—the instance in which he suffered shooting pain in his chest, neck, and left arm—does not reflect any statement by Plaintiff to medical staff regarding contaminated food or any diagnoses that Plaintiff had ingested contaminated food and was suffering symptoms as a result of that alleged contamination. (Dkt. #60-1, pp. 12-17). Plaintiff's self-diagnosis of food contamination is not sufficient. A self-diagnosis, alone, will not support a medical conclusion. *See Turner v. Moffett*, No. 3:12-CV-220, 2013 WL 5214070, at *3 (S.D. Tex. Sep. 17, 2013) (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence); *see also Kayser v. Caspar,* 16 F.3d 280, 281 (8th Cir. 1994) (concluding that a prisoner's self-diagnosis alone will not support a medical conclusion); *Ahmadi v. Sova*, No. G-04-83, 2007 WL 656544, at *4 (S.D. Tex. Feb. 27, 2007) (quoting *Wesson v. Oglesby*, 910 F.2d 278, 281, 282 (5th Cir. 1990)) (explaining that conclusory "assertions of a serious medical condition" are insufficient to verify that a serious medical condition existed). Plaintiff has failed to nudge his food contamination claims from conceivable to plausible. *Iqbal*, 566 at 677–78. Plaintiff's claims are dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1)

2.    Supervisory Liability

Plaintiff asserts that he is suing Defendants FSM Johnson, Warden Calhoun, Warden Britt, Warden Funai, Warden Navarrete, and Lt. Meador in their respective supervisory roles regarding his food contamination claims. In order to successfully plead a cause of action in a civil rights

case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez*, 801 F.2d at 793. The doctrine of *respondeat superior*, however, does not apply in section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has held that the term supervisory liability in the context of a section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id*. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has not alleged any facts showing that each Defendant was personally involved in denying him his constitutional rights. His claim is purely speculative and does not save it from dismissal. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013).

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's rights.

*a.     Policy or Custom*

Although Plaintiff argues Defendants Warden Britt, Warden Funai, and Correctional Officer Lee created a policy or custom under which unconstitutional practices occurred, he fails to specifically identify any policy or custom created by each defendant or that any of these defendants are policymakers within their state agency. Individual supervisory officials may be held liable for implementing a policy that is itself a repudiation of constitutional rights and was the moving force behind a constitutional violation, but the plaintiff must identify specific policies and explain how these policies amounted to a repudiation of constitutional rights and were the moving force behind the alleged violation. *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002); *Spiller v. City of Texas City Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997).

While Plaintiff complains that Defendant Britt furthered a custom of impeding access to courts, he offers nothing to suggest Defendant Britt knew of, much less implemented, such a custom or policy in violation of TDCJ regulations. (Dkt. #34, p. 3). The same is true of Plaintiff's allegations that Warden Funai failed to promulgate policies regarding food service in violation of TDCJ's regulations. Plaintiff does not point to any other incidents showing the existence of an alleged policy or custom actually created by Defendants Britt, Funai, or Lee.

*b.     Failure-to-Train-or-Supervise*

Plaintiff also alleges Defendants FSM Johnson and Lt. Meador failed to train or supervise their respective subordinates but offers only bare assertions without supporting facts. (Dkt. #34, pp. 3, 36). To hold a defendant supervisor liable on a theory of failure-to-train-or-supervise, the plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure-to-train-or-supervise and the violation of the plaintiff's

26

rights; and (3) the failure-to-train-or-supervise amounts to deliberate indifference. *Brauner v. Coody,* 793 F.3d 493, 501 (5th Cir. 2015); *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397 (5th Cir. 2017).

Plaintiff has failed to allege any facts suggesting a causal link between Defendants Johnson and Meador's alleged failure-to-train-or-supervise his food contamination claims or harassment claim. Deliberate indifference is a "stringent standard of fault," *id*., requiring the plaintiff to show "that the official 'disregarded a known or obvious consequence of his action.'" *Id*. Actions or decisions by officials "that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id*. Conclusory allegations of failure-to-train-or-supervise are insufficient to set out a constitutional claim. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Plaintiff has offered only conclusory allegations of Defendants Johnson's or Meador's alleged failure-to-train-or-supervise.

An essential element of his failure to supervise/train claim is that the failure amounted to deliberate indifference. To satisfy the deliberate indifference prong, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005). "A showing of deliberate indifference requires that the [Plaintiff] show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." *Id*. Here, Plaintiff's allegations are conclusory in nature and do not present a section 1983 failure-to-train-or-supervise claim against Defendants. Those claims are dismissed for the failure to state a claim upon which relief may granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

3.    Failure to Protect

Plaintiff also asserts throughout his complaint that Defendants failed to protect him from those persons who allegedly placed contaminants in his food. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[ ] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders' Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety"; indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed—and he must have drawn that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. Mere negligence is insufficient to establish a failure to protect claim. *Farmer*, 511 U.S. at 837.

Plaintiff's allegations that Defendants failed to protect him from contaminants being placed in his food by other inmates and unknown guards are merely conclusory. A paramount inquiry for a failure to protect claim is whether the defendant had knowledge of a specific threat posed by one inmate to another. *See Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) (citing *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) ("An inmate's history of violence alone is insufficient to impute to prison officials' subjective knowledge of the inmate's danger to harm other inmates." (citing *Norman v. Schuetzle*, 585 F.3d 1097, 1104-06 (8th Cir. 2009), *overruled on other grounds*

28

*by Pearson v. Callahan*, 555 U.S. 223 (2009)). Other than conclusory statements, Plaintiff has failed to allege any facts that any Defendant knew that other inmates and unknown officers were placing contaminants in Plaintiff's food and then disregarded that information. Plaintiff has failed to allege facts that any Defendant drew the inference that Plaintiff was at substantial risk of harm. Plaintiff's failure to protect claim is dismissed for failure to state a claim upon which relief may be granted.

4.    Conspiracy pursuant to 42 U.S.C. § 1983

Plaintiff contends in a conclusory manner that Defendants Calhoun, Jackson, Davis, Farris, Thomas, and Karriker engaged in various conspiracies to deprive him of his rights.

To establish a conspiracy claim under § 1983, Plaintiff has to show an actual violation of § 1983 and an agreement by the defendants to commit an illegal act. *See Hale v. Townley,* 45 F.3d 914, 920 (5th Cir. 1995); *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir. 1982). As the preceding discussion demonstrates, Plaintiff has failed to allege a claim regarding a violation cognizable under Section 1983. He, moreover, does not allege facts tending to show that the defendants entered into an agreement to deprive him of his constitutional rights. "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir. 1986) (internal quotation marks omitted).

Plaintiff's conspiracy further fails to state a claim because all of these Defendants are from a single entity: the Texas Department of Criminal Justice (TDCJ). As such, a conspiracy claim against them is barred by the intra-corporate conspiracy doctrine. *Reynosa v. Wood*, 134 F.3d 369 (5th Cir. 1997). Where all defendants are members of the same collective entity, it is construed

that the conspiracy does not involve two or more people. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). In this case, all Defendants named in the conspiracy are employees of TDCJ. Thus, they constitute a single entity, which is incapable of conspiring with itself. Even when the defendants are sued in their individual capacities, as in this case, the premise is still true. *Collins v. Bauer*, 2012 WL 443010 (N.D. Tex. Jan. 23, 2012). Plaintiff's conspiracy claims are conclusory and barred by the intra-corporate conspiracy doctrine and are dismissed for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### 5.   Harassment and Threats

Plaintiff asserts that Defendant Officer Dew "levied malicious threats against Plaintiff and his family." (Dkt. #34, p. 16, 36). Threats, verbal taunts, and racial slurs, however, do not give rise to liability under section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). Allegations of verbal threats or other derogatory remarks, even racial slurs, do not constitute actionable constitutional violations. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). The *Robertson* court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" *Id*. (citation omitted); *accord Watson v. Winborn*, No. 02-10984, 67 F. App'x 241, 241 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing *Calhoun*, 312 F.3d at 734; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

"Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim." *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994); *Portillo v. Brown*, No. 2:07-CV-0031,

2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing *Al-Ra'id v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995) (inmate's allegations that prison employee called him names, laughed at him and refused to dismiss disciplinary action against him based on his race were conclusory and failed to state a claim). Plaintiff's claims regarding verbal threats, name calling, and harassment simply do not provide a basis for a federal civil rights lawsuit and therefore are dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

6.   <u>Investigations and Denial of Grievances</u>

Plaintiff contends that Warden Calhoun failed to adequately investigate his grievances and put a stop to the alleged harassment and contamination of his food. Plaintiff also asserts Lt. Meador refused to participate in helping Plaintiff informally resolve his grievance before he filed a formal Step One grievance. Plaintiff intimates that various defendants failed to assist him with his grievances and may have obstructed the grievance process. Plaintiff's complaint regarding the grievance procedure or grievance investigation fails to state a claim.

An inmate has no constitutional right to an adequate and effective grievance procedure. *Propes v. Mays*, 169 F. App'x 183, 184–85 (5th Cir. 2006) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)). The Constitution also does not create a federally protected liberty interest for prisoners to have their grievances investigated or resolved to their satisfaction. *See Minix v. Stoker*, 289 F. App'x 15, 17 (5th Cir. 2008); *Geiger*, 404 F.3d at 373–74.

Any alleged due process violation arising from an "alleged failure to investigate [prisoner] grievances is indisputably meritless." *Geiger*, 404 F.3d at 374; *see also Taylor v. Cockrell*, 92 F. App'x 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated [the prisoner's] constitutional rights by failing to investigate his grievances fall short of establishing a federal

constitutional claim."). To the extent Plaintiff claims he was entitled to more investigation and response, he has no protected due process rights in the handling of his grievances. *See Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (rejecting claim that prison officials' failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances"). He also has no claim against prison officials merely because that official denied his grievance complaints. *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013). Plaintiff simply has no "federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374; *see Avon v. Green*, No. 14-CV-109, 2014 WL 1917543, at *2 (N.D. Tex. May 12, 2014) ("Denying plaintiff's grievances or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights.").

The mishandling of grievance processes by a prison official also "does not give rise to a First Amendment claim for denial of access to the courts." *West v. Putman*, No. 2:18-CV-71, 2018 WL 4211749, at *4 (S.D. Tex. Apr. 12, 2018) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). Moreover, the Fifth Circuit has held that there is not a constitutionally "protected liberty interest in the processing of ... prison grievances." *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (citing *Geiger*, 404 F.3d at 373–74); *see also Mayfield v. Wilkinson*, 117 F. App'x 939, 940 (5th Cir. 2004) (finding that a prisoner was not "constitutionally entitled to an administrative grievance procedure."). Even considering the additional allegations, Defendants Calhoun, and Meador's alleged obstruction of his attempts to file grievances "did not deprive him of his ability to bring his underlying constitutional claims in federal court." Plaintiff's allegations fail to state a

cognizable claim under the First Amendment. *West*, 2018 WL 4211749, at *4 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Plaintiff's claims related to the grievance procedure and the denial or unsatisfactory resolution of his grievance complaints are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### 7.   Violation of Prison Rules

Plaintiff contends that prison officials failed to comply with the Uniform Offender Correspondence Rules and other prison rules. A violation of prison policy or rules, standing alone, is not sufficient to demonstrate a constitutional violation. *See Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam). Plaintiff has failed to allege any facts showing that a violation of a prison rule rose to level of a constitutional violation. To the extent Plaintiff is alleging that Defendants violated a prison rule or policy that allegation fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C.   **First Amendment Claims**

### 1.   Interference with Correspondence

Plaintiff alleges that Warden Calhoun at the Gurney Unit—from January 27, 2018, to February 12, 2018—and Warden Navarrete at the Coffield Unit—from March 3, 2018, to October 31, 2018[6]—acted with deliberate indifference to Plaintiff's safety because they each failed to appropriately train and supervise their employees regarding compliance with the Uniform

---

[6] Any instances occurring after October 31, 2018, are not cognizable. *See Gonzalez*, 702 F.3d at 788 (holding that pre-filing exhaustion is required and a court has no discretion to consider claims that have not been exhausted).

Offender Correspondence Rules, which prohibits inmate access to the content of another inmate's mail. (Dkt. #34, p. 7).

Specifically, Plaintiff declares that unknown officers—who were not assigned to the mailroom of either unit—conducted "warrantless appropriation of Plaintiff's personal property contained in Plaintiff's outgoing mail." (Dkt. #34, p. 8). Plaintiff asserts that Defendants condoned the actions of the unknown officers who unreasonably disseminated the information or content of his outgoing mail to the officers and inmates, thereby threatening Plaintiff's safety. (*Id.*). Plaintiff alleges that the dissemination of the content of his outgoing letters was the basis for the contamination of his food by inmates and unknown officers. Plaintiff maintains that Defendants Calhoun and Navarrete violated Plaintiff's First Amendment rights and that he has a liberty interest in the contents of his private correspondence not being disseminated without a legitimate security concern. Plaintiff further asserts that the removal of the contents or information from his correspondence constitutes a Fourteenth Amendment due process violation and an unreasonable search and seizure prohibited by the Fourth Amendment. However, Plaintiff's claims fail to state a claim upon which relief may be granted.

Plaintiff does not allege that Wardens Calhoun or Navarrete had any personal involvement in the review, removal, or dissemination of the information or property contained in Plaintiff's correspondence. *Delaughter*, 909 F.3d at 136-37 (holding that personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct).

Plaintiff also fails to provide: (1) any factual detail as to how the information was collected by the unknown officers considering TDCJ's inmate mail process, (2) what information was

removed from his letter that would threaten his safety and why was Plaintiff continuing to send out this information that officers could collect the same information over a long period of time— *e.g.*, March 3, 2018 to October 31, 2018, (3) how Wardens Calhoun or Navarrete knew that officers had collected the information from Plaintiff's correspondence, (4) how Wardens Calhoun or Navarrete knew or was made aware that the information was being disseminated to other prison staff and inmates, and (5) how Wardens Calhoun and Navarrete would have known that the information would cause unknown officers and inmates to contaminate Plaintiff's food. Accordingly, Plaintiff fails to provide any causal link between the information in his correspondence and the tampering with his food. Plaintiff's allegation is wholly conclusory and fails to comply with requirements of Rule 8(a) and *Iqbal*. 556 U.S. at 677-78. A plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Because he has not done so, he has failed to state a claim upon which relief may be granted.

With respect to Plaintiff's supervisory liability claim, he fails to allege any facts that: (1) indicate a causal link between the failure to train and Plaintiff's alleged harm, and (2) the failure to train or supervise amounts to deliberate indifference. *Brauner,* 793 F.3d at 501. Plaintiff has alleged only conclusory allegations of a failure-to-train-or-supervise claim against Wardens Calhoun and Navarrete.

A prisoner has a limited First Amendment right against the "unjustified governmental interference with communication." *Brewer v. Wilkerson*, 3 F.3d 816, 820-21 (5th Cir. 1993). The limitation is that the interference may be condoned if it is "reasonably related to a legitimate penological interest." *Turner v. Safley*, 482 U.S. 78, 89 (1987). For example, violation of a prison

regulation that requires a prisoner to be present when his incoming legal mail is inspected is not a violation of a prisoner's constitutional rights. *Brewer*, 3 F.3d at 825. Plaintiff has failed to state a claim upon which relief can be granted.

As for Plaintiff's Fourth Amendment privacy claim, he invokes substantive due process. Because the Fourth Amendment provides an explicit basis for his right against unreasonable government searches of his personal papers and effects, he must look to the Fourth Amendment to enforce his privacy right against the unwanted search of his incoming or outgoing mail. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Stroud v. United States*, 251 U.S. 15, 21-22 (1919) (analyzing search and seizure of prisoner's outgoing mail under the Fourth Amendment); *Busby v. Dretke*, 359 F.3d 708, 715-16 (5th Cir. 2004) (same).

To succeed on his privacy claim under the Fourth Amendment, Plaintiff must first show that he had a "constitutionally protected reasonable expectation of privacy" in his incoming and outgoing mail. *Katz v. United States*, 389 U.S. 347, 360 (1967). To do so, he must demonstrate "an actual expectation of privacy; that is ... that he [sought] to preserve [his outgoing general correspondence] as private. ... Second, [he must show that his] expectation of privacy is one that society is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. 334, 338 (2000). The practice of opening a prisoner's incoming and outgoing mail to inspect it for security purposes has been upheld as reasonable, even when the prisoner was not present. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (analyzing claim under the First Amendment); *Brewer*, 3 F.3d at 825 (same).

He does not allege that he had an actual expectation that his mail would never be opened by prison staff. Further, as the practice of opening and inspecting mail for contraband outside of a

36

prisoner's presence has been continuously upheld as constitutional, Plaintiff cannot demonstrate that any expectation to the contrary is objectively reasonable. Plaintiff cannot assert that his legal mail was entitled to an expectation of privacy. The Fifth Circuit has held that prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected. *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015), citing *Brewer,* 3 F.3d at 825; *Patel v. Haro,* 470 F. App'x 240, 244 (5th Cir. 2012). Therefore, Plaintiff did not have a reasonable expectation of privacy in his mail, and this claim is dismissed as frivolous.

Plaintiff also asserts a generalized fear that unknown officers were releasing the information contained in his mail to the inmate population, which could result in harm to him. To the extent that Plaintiff is attempting to assert a federal constitutional claim, it would be a failure-to-protect claim. The Fifth Circuit has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995) (citations and internal quotation marks omitted).

Here, Plaintiff does not allege that either Warden Calhoun or Warden Navarrete subjectively knew of and disregarded a substantial risk of harm to him. "To sustain his constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" *Hamilton v. Dretke*, 2009 WL 320777, at *2 (N.D. Tex. Feb. 10, 2009) (quoting *King v. Fairman,* 997 F.2d 259, 261 (7th Cir. 1993)). Plaintiff offers nothing more than his vague and

conclusory allegations that the knowledge could harm him, if known in the general inmate population. It is clear that such conclusory allegations do not suffice to state a federal claim. *Iqbal*, 556 U.S. at 678. Plaintiff's claim is dismissed for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2.     Access to Offender Telephone Service

Plaintiff complains that from January 25, 2018, to February 12, 2018, Warden Calhoun acted with deliberate indifference to Plaintiff's future health and right to access to courts. He states that TDCJ does not permit new incoming inmates access to the Offender Telephone System for the first 30-days of their orientation intake. He asserts that he was prohibited from using the Offender Telephone System without any provisions in place for health emergencies or legal consultation. (Dkt. #34, p. 10).

There is no constitutional right to have access to a telephone system and Plaintiff fails to assert that such a constitutional right exists. Secondly, as to his complaints that failing to have access to the Offender Telephone System hinders his access to health care or legal consultation, TDCJ provides on-site health care through its contract provider, the University of Texas Medical Branch, *see* Offender Orientation Handbook (rev. February 2017)[7] at pp. 39-42. TDCJ also provides rules and procedures regarding Attorney Visits in its Offender Orientation Handbook, *Id.* at p. 111. Plaintiff also had the ability to utilize the offender correspondence system to send and receive letters. *Id*. at pp. 112-120. Plaintiff failed to allege any facts—other than conclusory allegations—that would suggest that Defendant Calhoun was deliberately indifferent to his health

---

[7] https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf, last visited March 3, 2022.

or safety. Plaintiff fails to state a claim upon which relief may be granted and this claim is dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

   3. <u>Access to Courts</u>

  Plaintiff asserts that Warden Calhoun's adherence to the 30-day policy interfered with his access to courts. (Dkt. #34, p.10). He claims the policy prohibited him from accessing the unit's law library for 30-days. He claims he was "prevent[ed] from discovering how to present and submit a grievance based on ongoing misconduct," "thwarted in growing a real time understanding of the Federal Rules of Civil Procedure," and "left unaware of how to plead a cause of action." (*Id.*) Plaintiff claims that his lawsuit in Civil Action No. 4:16cv-cv-879, *Prescott v. Denton County Jail, et al.*, in the Eastern District of Texas-Sherman Division, and in Civil Action No. 3:18cv378, *Prescott v. Pace*, in the Southern District of Texas-Houston Division, were significantly impacted by his inability to access the law library for those first 30-days. (*Id.*)

  Plaintiff also complains that Law Librarian Karriker at the Coffield Unit denied Plaintiff access to courts by refusing to eliminate "unreasonable barriers to law library access which she knew significantly limited access to those unaware of how to correctly submit law library attendance request forms." (Dkt. #34, p. 11). He states that law library procedures were posted outside the law library and not in the common areas of inmate housing areas. He further contends that the in-cell delivery system of delivering legal materials to inmates in segregated housing areas or during the bi-annual lockdown are deficient. (Dkt. #34, p. 12). Plaintiff also was dissatisfied with law library access when he was moved to the Coffield Unit trusty camp. (Dkt. #34, p. 13). He asserts that he complained to Wardens Britt and Navarrete regarding his issues pertaining to

"intentional interference to court access" and that they failed to take any actions to correct the conditions. (Dkt. #34, p. 14).

Prisoners have a constitutionally recognized right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). As the right of access to the courts is not a "freestanding right," it is necessary that he demonstrate actual injury resulting from the alleged denial of access. *Id.* at 351. Without a showing of an actual injury, a plaintiff lacks standing to pursue claimed denials of access to courts. *Id.* at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted). A plaintiff must describe the claim well enough to establish that its "arguable nature ... is more than hope." *Id.* at 416 (internal quotation marks omitted).

Here, Plaintiff has not plausibly alleged an actual injury. In his civil rights lawsuit against Denton County Jail officials, Civil Action No. 4:16-cv-879, *Prescott v. Denton County Jail, et al*., Plaintiff filed a Notice of Change of Address (Dkt. #24), a Motion for Summary Judgment (Dkt. #25), a Motion to Add Supplemental Amendment (Dkt. #26) from the Gurney Unit in February 2018—the same time period that Plaintiff was being processed through intake or orientation. Final Judgment in that case was not entered until March 11, 2020—two years after this time period. (Dkt. #184).

As to his civil rights claim in Civil Action No. 3:18cv378, *Prescott v. Pace* in the Southern District of Texas-Houston Division, this lawsuit was not created until November 6, 2018, with the severance of his claims against Practice Manager Pace—approximately eight (8) months *after* his 30-day intake/orientation period at the Gurney Unit. Plaintiff has not alleged facts showing that he suffered an actual injury in any of his litigation during the 30-day intake period.

Pertaining to his complaints about access to the law library at the Coffield Unit, Plaintiff has not identified any motion he was unable to file, or any nonfrivolous claim he lost or was unable to pursue. *See McDonald,* 132 F.3d at 230-31 (noting that a plaintiff must show prejudice to his position as a litigant) (citations omitted). He has also wholly failed to allege any specific harm. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (holding that inmate alleging denial of access to courts must demonstrate actual injury). He has therefore failed to state a plausible claim that he was denied access to the courts. Plaintiff's access to courts claims are dismissed for the failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

4.     First Amendment Retaliation

Plaintiff contends that between March 3, 2018, and December 28, 2018, Defendant Officer Lee threatened and used intimidation on him in retaliation for Plaintiff including Coffield Unit officers in his federal litigation. (Dkt. 34, pp. 17, 34). Plaintiff alleges that Officer Lee would openly announce in front of large groups of inmates that "they had already poisoned Plaintiff for being an informant." Plaintiff's retaliation claim is conclusory at best.

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir.), *cert. denied*, No. 19-5365, 2019 WL 4923261 (U.S. Oct. 7, 2019)) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a retaliation claim, an inmate must allege: 1) a specific constitutional right; 2) an intent to retaliate against the prisoner for his or her exercise of that right; 3) a retaliatory adverse act; and 4) causation. *Peters v. Quarterman*, 252 F. App'x 705, 706 (5th Cir. Oct. 31, 2007) (citing *Hair v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003)).

Mere conclusory allegations of retaliation are not enough, however; an inmate must instead assert specific facts. *Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988). He must show more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). He must either "produce direct evidence of retaliation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166. Causation requires a showing that "but for the retaliatory motive, the complained of incident ... would not have occurred." *McDonald*, 132 F.3d at 231 (citation omitted). "Furthermore, the alleged retaliatory acts must be more than *de minimis*, which means they must be capable of

deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006). The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *See Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citation omitted).

Plaintiff has alleged a specific constitutional right—that is exercising his First Amendment right to file a lawsuit against the Coffield Unit prison officials. One flaw in Plaintiff's retaliation claim is in the timing. Plaintiff asserts that Officer Lee was retaliating against him from March 3, 2018, to December 28, 2018, however, Plaintiff's lawsuit incorporating the Coffield Unit prison officials in his Third Amended Complaint was not filed until October 31, 2018. (Dkt. #2). Plaintiff does not explain how Officer Lee would have been retaliating against him seven months before Plaintiff exercised this specific constitutional right. Plaintiff also fails to allege facts how Officer Lee would have learned or known about the lawsuit involving the Coffield Unit prison officials so that he could have retaliated against Plaintiff from March 3, 2018, to October 31, 2018. As Officer Lee has never been ordered to answer in this lawsuit, there is no basis from the filing of the lawsuit on October 31, 2018, that Officer Lee would have any knowledge that the lawsuit exists.

Here, any instances of retaliation occurring *after* October 31, 2018, by Officer Lee; are not cognizable. *See Gonzalez*, 702 F.3d at 788 (holding that pre-filing exhaustion is required and a court has no discretion to consider claims that have not been exhausted). Hence, the Court is examining one day of possible retaliation by Officer Lee.

On its face, Officer Lee's alleged statements that "they were already poisoning Plaintiff for being an informant," can be a matter of grave concern in a prison setting. Courts have long recognized that being labeled a "snitch" in the prison environment can indeed pose a threat to an

inmate's health and safety in violation of the Eighth Amendment. *See United States v. Henderson,* 565 F.2d 900, 905 (5th Cir. 1978) ("the life of a 'snitch' in a penitentiary is not very healthy"); *see also Comstock v. McCrary,* 273 F.3d 693, 699 n.2 (6th Cir. 2001) (noting that prisoner labeled a snitch could become a target for other prisoners' attacks); *Northington v. Marin,* 102 F.3d 1564, 1567–68 (10th Cir. 1996) (affirming award of § 1983 damages where sheriff deputy spread rumor that plaintiff was a snitch, and plaintiff was subsequently assaulted by other inmates for that reason). However, in addition to Plaintiff's medical records not supporting an allegation that Plaintiff's food was contaminated or that Plaintiff was ever poisoned from eating tainted food (Dkt. #60-1), Plaintiff's prison records do not reflect that he ever filed an Offender Protection Investigation asserting that inmates were threatening him or attacking him on the basis of him being labeled an "informant." (Dkt. #60-8). *See Turner*, 2013 WL 5214070, at *3 (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence). Plaintiff's objective prison records do not support his claim that he was labeled an informant or threatened by other inmates because of the alleged label.

Plaintiff's conclusory allegations of retaliation and his mere belief that he has been a victim of retaliation are not sufficient. He has failed to move his claim from conceivable to plausible. *Iqbal*, at 678. Plaintiff's First Amendment claim for retaliation is dismissed for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### D.    Fourteenth Amendment Claims

#### 1.    Equal Protection of the Law

Plaintiff alleges many times throughout his Amended Complaint that he has been denied equal protection of the law regarding his food contamination, access to courts, and harassment

claims. This claim is frivolous as Plaintiff fails to allege any facts that show intentional discrimination based on a protected class.

"Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner,* 482 U.S. at 84. "Inmates [clearly] have the constitutional right to be free from racial discrimination." *Bentley v. Beck,* 625 F.2d 70, 71 (5th Cir. 1980); *Lee v. Washington,* 390 U.S. 333 (1968). The constitutional rights that prisoners possess; however, are more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy,* 532 U.S. 223 (2001).

Plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012), citing *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001). Because Plaintiff did not allege he was treated differently from similarly situated prisoners or that defendants engaged in purposeful discrimination to harm an identifiable group, his amended complaint fails to state an equal protection claim upon which relief may be granted. *See Wheeler v. Miller,* 168 F.3d 241, 252 (5th Cir. 1999); *Johnson v. Rodriguez,* 110 F.3d 299, 306–07 (5th Cir.), *cert denied,* 522 U.S. 995 (1997).

A prisoner must allege either a specific act of discrimination or offer proof of discriminatory intent by prison officials and may not rest an equal protection claim "on only his personal belief that discrimination played a part" in the complained-of act. *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995). Conclusory claims of discrimination do not establish discriminatory intent. *See Eltayib v. Cornell Co. Inc.,* 533 F. App'x 414, 415 (5th Cir. 2013). Thus, a prisoner's equal protection claim must fail where he does not allege any facts to demonstrate that prison

officials "purposefully intended to discriminate against *him* as a member of an identifiable group." *Taylor v. Johnson,* 257 F.3d 470, 474 (5th Cir. 2001) (emphasis added); *Woods,* 51 F.3d at 580 (denying prisoner's equal protection claim because he failed to offer proof of discriminatory intent or a specific act of discrimination); *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir. 2003) (finding that inmate's equal protection claim failed as he did not allege he was a member of a protected class or suffered a violation of a fundamental right). Absent an allegation of improper motive, a mere claim of inconsistent outcomes in particular, individual instances will not provide a basis for relief. *See Thompson v. Patteson,* 985 F.2d 202, 207 (5th Cir. 1993).

Plaintiff claims that he has been denied equal protection by the failure to redress his food contamination claim, his harassment clams, and his First Amendment access to courts claims. While he did not specifically attest to it, the records provided by *Amicus Curiae* indicate that Plaintiff is a black male. Plaintiff's various pleadings assert that he has been discriminated against on the basis of his mental health and the unknown content of his personal correspondence, but he did not assert discrimination on the basis of his race.

Plaintiff has failed to point to the denial of any cognizable constitutional right. The objective medical records and objective prison records do not support Plaintiff's claims of food contamination and credible threats from inmates and officers regarding the contents of his personal mail. *See Turner,* 2013 WL 5214070, at *3 (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence); *see also Kayser,* 16 F.3d at 281 (concluding that a prisoner's self-diagnosis alone will not support a medical conclusion); *Ahmadi,* 2007 WL 656544, at *4 (quoting *Wesson*, 910 F.2d at 281, 282 (explaining that conclusory "assertions of a serious medical condition" are insufficient to verify that a serious medical

condition existed). There is no violation of a fundamental right based on his race. This claim is dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2.   Fourteenth Amendment Bodily Integrity Claim

Plaintiff contends under section 1983 that Defendants' actions violated Plaintiff's Fourteenth Amendment procedural and substantive due process rights. (Dkt. #34, p. 8 && 10-11, p. 14 & 26, p. 19). Plaintiff maintains that Defendants subjected Plaintiff repeatedly to cruel and unusual punishment by allowing other inmates and unknown officers to place contaminants in his food, and that these allegations show that Defendants violated Plaintiff's Fourteenth Amendment right to bodily integrity. (Dkt. #34, p. 8, && 10-11). Plaintiff has offered no more than conclusory allegations of a Fourteenth Amendment violation and seems to rely only on the same allegations related to his Eighth Amendment claim.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To state a Fourteenth Amendment due process claim under Section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir. 2001). "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest." *McCasland v. City of Castroville,* 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (quoting *DePree v. Saunders,* 588 F.3d 282, 289 (5th Cir. 2009)). In *DeShaney v. Winnebago Cnty.,* 489 U.S. 189 (1989), the United States Supreme Court stated:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's

liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble,* [429 U.S. at 103] ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause....

*Id.* at 199–200 (internal citations and footnotes omitted). Thus, the Fourteenth Amendment affords a person the right to be free of state-occasioned damage to bodily integrity if the plaintiff can show the defendant's actions were taken with deliberate indifference. *Whitley v. Hanna,* 726 F.3d 631, 650–51 (5th Cir. 2013) (quoting *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc) (citing *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir. 1981))). Similarly, the Eighth Amendment's proscription of cruel and unusual punishments is violated by "deliberate indifference to serious medical needs of prisoners." *See Estelle,* 429 U.S. at 104.

Plaintiff has not alleged a Fourteenth Amendment claim separate from his Eighth Amendment right to be free from cruel and unusual punishment—which is asserted against state actors through the Fourteenth Amendment.[8] Thus, the Eighth Amendment is the proper vehicle for his claim. *See Whitley v. Albers,* 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners....").

---

[8] The Eighth Amendment by its own terms applies only to the federal government and is applicable to states only through the due process clause of the Fourteenth Amendment. *See Tuilaepa v. California,* 512 U.S. 967, 970, (1994).

Allowing a factually identical Fourteenth Amendment due process claim would be superfluous. Plaintiff's Section 1983 Fourteenth Amendment due process claim for damages are dismissed as the claim is subsumed by the Eighth Amendment. This claim is dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

3.      Class of One Equal Protection Claim

Plaintiff asserts that he is bringing a Fourteenth Amendment claim for Equal Protection claim under the theory of a "Class of One." (Dkt. #34, p. 29). He claims that his mental illness was the basis of unequal treatment. He asserts that Defendants "implemented a campaign targeting [him] with widescale intentional intimidation, harassment, and verbal abuse, which constitute[d] an objectional use of force initiated in connection with actual physical attack resulting in Plaintiff's serious injury." (*Id.*). It appears that Plaintiff equates his food contamination claims as physical attacks as Plaintiff is not asserting that any correctional officer used physical force against him.

To state an equal protection claim, a plaintiff must allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that he has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To state a class-of-one equal protection claim, a plaintiff must allege that a state actor has intentionally treated him differently than others similarly situated, and there is no rational basis for the difference in treatment. *See Olech*, 528 U.S. at 564. "[T]he Fifth Circuit requires plaintiffs to

49

show 'that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.'" *Lugo v. Collin Cnty.*, No. 4:11-CV-00057, 2011 WL 4378093 at *11 (E.D. Tex. Aug. 2, 2011) (citing *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)). "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Little v. Tex. AG*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)). Conclusory allegations of "class of one" discrimination fail to state a claim. *See Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010).

From February 2, 2018, through February 12, 2018, Plaintiff claims Sgt. Cabrea denied him equal protection of the law because the Sergeant failed to prevent the contaminated food attacks upon Plaintiff and that Warden Calhoun failed to adequately train and supervise his subordinates at the Gurney Unit. (Dkt. #34, p. 29). As noted above, the objective medical evidence refutes any claim that Plaintiff suffered from food poisoning or food contamination while at the Gurney Unit. (Dkt. #60-1, p. 3). Plaintiff offers nothing to suggest that Sgt. Cabrea or Warden Calhoun were aware of any contamination of Plaintiff's food. Plaintiff also failed to state any facts that drew a causal connection between Warden Calhoun's alleged failure to adequately train and supervise his subordinates and Plaintiff's food contamination claim. Plaintiff's claims do not demonstrate that Sgt. Cabrea or Warden Calhoun singled Plaintiff out for disparate treatment on the basis of his mental health and then treated him differently than other inmates with mental health issues.

He offers nothing beyond his bare assertion that he had been treated differently than other inmates. The Fifth Circuit has held that bare and conclusory assertions are insufficient to support a "class of one" equal protection claim, particularly where these assertions offer no basis upon which to determine that persons similarly situated to the plaintiff were treated differently without rational basis. *See Bell*, 382 F. App'x at 393 (conclusory allegation that inmate was treated differently from other sex offenders failed to state a claim where inmate did not identify any other prisoners who were sexual offenders and were allowed to enroll in computer courses and inmate did not allege that other prisoners were convicted of the same offense as he was or that they were allowed into the same courses for which he applied); *see also Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (holding that a prisoner's conclusory allegations that others similarly situated had been granted parole were insufficient to state an equal protection claim where the prisoner "offer[ed] no specific factual support for his assertions"). Even assuming a "class of one" equal protection claim is available to Plaintiff; it is without merit and should be denied for failure to state a claim pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

E.     **Fifth Amendment**

Plaintiff asserts that he is bringing claims under the Fifth Amendment for denial of due process and equal protection. Plaintiff's claim under the Fifth Amendment fails because Plaintiff sues only state actors in this cause. The Fifth Amendment applies only to violation of constitutional rights by the United States or a federal actor. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Plaintiff's Fifth Amendment challenge fails to state a claim upon which relief may be granted and is dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**IV.      Conspiracy to violate civil rights under Sections 1985(2) and (3), and 1986**

Plaintiff asserts that he is bringing a claim that Defendants conspired to deny him his rights

under 42 U.S.C. § 1985(2) and (3), and § 1986. He contends

> that by each inmate and officer acts to retaliate for Plaintiff submitting grievances and
> forming federal complaint—by attacking Plaintiff's food sources and or by levying death
> and injury threats—inmates therefore demonstrated a tacit understanding to carry out
> prohibited conduct. There was an increase in malicious behavior targeting Plaintiff
> immediately after submission of grievances or when observed working on complaint in
> furtherance of conspiracy to impede Plaintiff from exercising protected conduct in violation
> of 42 U.S.C. § 1985(2) [and] (3).

(Dkt. #34, p. 15 & 29). He states that he is suing Defendants under 42 U.S.C. § 1986. (Dkt. #34,

6). Plaintiff misunderstands the purpose and application of 42 U.S.C. § 1985(2) and (3). Both

sections of 42 U.S.C. § 1985 require "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus" undergirding the conspirators' actions. *Mandawala v. Northeast Baptist

Hosp., Counts 1, 2, and 11*, 16 F.4th 1144, 1155 (5th Cir. 2021) (citing *Griffin v. Breckenridge*,

403 U.S. 88, 102 (1971) (for § 1985's requirements)); *see also Newberry v. E. Tex. State Univ.*,

161 F.3d 276, 281 n.3 (5th Cir. 1998) (noting that § 1986 claims cannot survive absent proof of

all elements of a § 1985 claim).

To state a claim under Section 1985(2), a plaintiff must allege a conspiracy to impede,

hinder, obstruct, or defeat the due course of justice in a state or territorial court. To state a claim

under Section 1985(3), a plaintiff must allege a conspiracy to impede, hinder, obstruct, or defeat

the right of interstate travel. Section 1985 requires that the conspirators' actions be motivated by

an intent to deprive their victim of the equal protection of the laws. "The language requiring intent

to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some

racial,  or  perhaps  otherwise  class-based,  invidiously  discriminatory  animus  behind  the

conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal

enjoyment of rights secured by the law to all." *Kush v. Rutledge*, 460 U.S. 719, 726 (1983) (quoting

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis in original)). To bring a Section

1985 claim, a plaintiff must allege:

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the laws, or of equal privileges and
> immunities under the laws, and (3) one or more of the conspirators committed some act in
> furtherance of the conspiracy; whereby (4) another person is injured in his person or property
> or deprived of having and exercising any right or privilege of a citizen of the United States;
> and (5) the action of the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (citing *Wong v.

Stripling*, 881 F.2d 200, 202–03 (5th Cir. 1989)).

To state a claim under Section 1986, a plaintiff must state a valid claim under Section 1985.

Section 1986 imposes liability on individuals who have knowledge of a conspiracy under Section

1985 but fail to take preventative action. Thus, a Section 1986 claim must be predicated upon a

valid Section 1985 claim. *Newberry*, 161 F.3d at 281 n.3.

As Plaintiff does not allege a racial or class-based discriminatory animus, he has failed to

state either a Section 1985 or a Section 1986 claim. Section 1985 generally addresses racial

discrimination and has not been broadly construed to encompass other identifiable groups. *See,

e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (quoting *Griffin v.

Breckenridge*, 403 U.S. 88, 102 (1971)) (providing that to establish a § 1985(3) claim, "a plaintiff

must show, *inter alia* ... that 'some racial, or perhaps otherwise class-based, invidiously

discriminatory animus [lay] behind the conspirators' action'"); *McLellan v. Miss. Power & Light

Co.*, 545 F.2d 919, 928 (5th Cir. 1977) (explaining that the Fifth Circuit has not explicitly decided

whether § 1985 extends beyond racial animus); *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 648,

668 (N.D. Miss. 2013) ("Section 1985 was enacted to address race-based animus and has rarely been extended further."). "A § 1985(3) class must possess a discrete, insular, and immutable characteristic, such as race, gender, religion, or national origin." *Jones*, 971 F.Supp.2d at 668 (citing *Galloway*, 817 F.2d at 1159).

Courts have held that prisoners are not a suspect class within the context of an equal protection claim. *See, e.g., Phillips ex rel. Phillips v. Monroe Cnty.*, 311 F.3d 369, 376 n.2 (5th Cir. 2002); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 446 (1985) (holding that mentally retarded persons are not a suspect or quasi-suspect class for purpose of equal protection review). Similarly, "[p]ersons designated as sexually violent predators are not a protected class" for equal protection purposes. *Grohs v. Fratalone*, Civ. No. 13–7870 (KM) (MAII), 2015 WL 6122147, at *5 (D. N.J. Oct. 16, 2015) (citing *Allen v. Mayberg*, No. 06–1801, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013)). Plaintiff has not cited, and the Court has not found, any cases holding that inmates with mental health issues—like bipolarism, mania, depression, etc.—constitute a protected class under Section 1985. Consequently, Plaintiff has failed to state a claim under Section 1985(2) and (3) and Section 1986. Plaintiff's claims are dismissed for failure to state claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V.   Injunctive Relief

As part of the relief he is requesting, Plaintiff requests a permanent injunction directing all Defendants in their official capacities to provide him with permanent injunctive relief regarding the future use of force, harassment, his right to privacy, and transportation (Dkt. #34, p. 33). For a permanent injunction to issue a plaintiff must prevail on the merits of his claim and establish that

equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). Here, the Court need not undertake an analysis of whether equitable relief is appropriate as Plaintiff did not prevail on the merits of his claims. Plaintiff's request for prospective injunctive relief against the Defendants in their official capacities is denied pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). It is accordingly

**ORDERED** that Plaintiff's claims arising after October 31, 2018, are **DISMISSED, WITHOUT PREJUDICE**, for the failure to exhaust administrative remedies. It is further

**ORDERED** that Plaintiff's claims against Defendants FSM Johnson, Warden Calhoun, Sgt. Cabrea, Asst. Warden Britt, Asst. Warden Funai, Asst. Warden Navarrette, Sgt. Jackson, Lt. Meador, Correctional Officer Dew, Sgt. Davis, Correctional Officer Lee, FSM Farris, Kitchen Officer Nash, Correctional Officer Thomas, and Law Librarian Karriker are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). All motions which may be pending in this action are **DENIED**.

**SIGNED** this the 7  day of **March, 2022.**


Thad Heartfield
United States District Judge